***********
Upon review of the competent evidence of record, with reference to the errors assigned, and in accord with the directives of the North Carolina Court of Appeals, the Full Commission, upon reconsideration of the evidence, enters the following Opinion and Award.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. At the June 14, 2005 hearing before Deputy Commissioner Philip A. Baddour, III, the parties and the Deputy Commissioner agreed to take judicial notice of all prior Opinions and Awards related to this matter, including the previous stipulations of the parties.
2. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — Plaintiff's medical records;
 b. Plaintiff's Exhibit One (1) — Additional medical records of Plaintiff.
 *********** ISSUE
The issue to be determined is whether Plaintiff is sufficiently cooperating with previously ordered medical treatment in order to justify reinstatement of his workers' compensation benefits?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 61 years old, with a date of birth of May 26, 1948.
2. Pursuant to the September 1, 2009 Opinion of the North Carolina Court of Appeals in this matter, the issue to be determined is whether Plaintiff is now in compliance with *Page 3 
the medical treatment requirements of the Full Commission's October 1, 1999 Opinion and Award.
3. The Full Commission previously found that Plaintiff sustained a compensable injury to his lower back on October 4, 1990 when he lifted a tarp to secure a load. Defendants admitted Plaintiff's October 4, 1990 work injury via a Form 21, and as of the time of the October 1, 1999 Full Commission Opinion and Award, Plaintiff was receiving continuing temporary total disability compensation at the rate of $399.00 per week.
4. The Full Commission previously found that Plaintiff sought treatment from his primary care physician, Dr. Lawrence Craig Hyman, for lower back pain following his October 4, 1990 work injury. Dr. Hyman prescribed a course of physical therapy, and subsequently referred Plaintiff to Dr. James Floyd Allen, a neurosurgeon. Dr. Allen first examined Plaintiff on December 28, 1990. Dr. Allen determined that there was a probable lateral disc herniation at L3-L5 levels of the spine, and prescribed an epidural steroid injection. Plaintiff showed a significant reduction of his leg pain following the injection. The Full Commission concluded that the treatment and care provided by Dr. Robert Blaine Hansen, II, Dr. Gilbert Martin Snider, and Dr. Alan Raymond Towne were of benefit to Plaintiff.
5. Plaintiff never returned to work for Defendant-Employer, or for any other employer since the time of his October 4, 1990 work injury.
6. The October 1, 1999 Full Commission Opinion and Award further concluded that Defendants should provide medical compensation for the cost of treatment by Dr. Hansen, Dr. Snider, and Dr. Towne to Plaintiff, but that there was no evidence that Plaintiff should receive medical compensation for treatment provided by any other physician he saw after entry of the February 11, 1998 Order which designated Dr. Hansen as Plaintiff's treating physician, unless *Page 4 
Dr. Hansen specifically referred him to that physician for reasons related to his October 4, 1990 work injury.
7. The October 1, 1999 Full Commission Opinion and Award suspended Plaintiff's medical and temporary total disability compensation from November 30, 1998 and continuing until he complied with vocational rehabilitation efforts offered by Defendants, and with the treatment of Dr. Hansen, or a physician designated by Dr. Hansen as a treating physician.
8. On February 20, 2001, the North Carolina Court of Appeals affirmed the October 1, 1999 Full Commission Opinion and Award.
9. This matter has an extensive litigation history, much of which is set forth in the Opinion and Order of the Full Commission filed November 15, 2002, and that Opinion and Order is incorporated herein by reference. On March 2, 2004, the North Carolina Court of Appeals dismissed Plaintiff's subsequent appeal of the November 15, 2002 Full Commission Opinion and Order. On May 26, 2004, the Supreme Court of North Carolina denied Plaintiff's petition for discretionary review.
10. On April 7, 2005, the Full Commission entered an Order, which is incorporated herein by reference, upon Plaintiff's Form 33 and Defendant's Motion to Dismiss Plaintiff's Request for Hearing. The Full Commission found that it had insufficient evidence on whether Plaintiff complied with the October 1, 1999 Full Commission Opinion and Award. The Full Commission granted Plaintiff's request for a hearing and remanded the matter to the Deputy Commissioner section for a hearing "regarding the issue of [P]laintiff's compliance with medical treatment as it relates to the possible reinstatement of [P]laintiff's benefits." *Page 5 
11. From the Opinion and Award of Deputy Commissioner Baddour entered December 31, 2006 reinstating benefits, Defendants gave notice of appeal to the Full Commission on January 10, 2007.
12. In the proceedings that resulted in the October 1, 1999 Full Commission Opinion and Award, the parties stipulated to the following: "[t]his is a compensable injury and a Form 21 was approved by the North Carolina Industrial Commission on 11 March 1991."
13. In Finding of Fact Number eight (8) of the November 15, 2002 Full Commission Opinion and Order, the Full Commission found that the October 1, 1999 Full Commission Opinion and Award provided in the Conclusions of Law that, "[t]he suspension of Plaintiff's benefits shall continue until, in the opinion of the Executive Secretary, Tracey Weaver, [P]laintiff's refusal to comply with vocational efforts and with the treatment of Dr. Hansen has ceased." The Full Commission further stated that "[a]ccordingly, the [P]laintiff is not barred from pursuing a reinstatement of his benefits by showing that his failure to comply has ceased." The Full Commission denied Plaintiff's claim because he sought to re-litigate previously determined issues, rather than present evidence on whether he was in compliance with the October 1, 1999 Full Commission Opinion and Award.
14. After seeing Dr. Hansen on February 14, 2005, Plaintiff sent correspondence to Executive Secretary Tracey H. Weaver on February 18, 2005 (which is treated as a Motion and admitted into evidence herein), attaching medical documentation of his office visit to Dr. Hansen and copies of Dr. Hansen's referrals. Plaintiff also included a request for an evidentiary hearing. Defendants' response, dated February 22, 2005, which is treated (by request of Defendants) as a Motion to Dismiss, is also admitted into evidence herein. *Page 6 
15. Although Plaintiff sought a ruling from Executive Secretary Weaver pursuant to the October 1, 1999 Full Commission Opinion and Award, Executive Secretary Weaver referred the matter to the Full Commission. On April 7, 2005, the Full Commission issued an Order remanding the matter to the Deputy Commissioner section for an evidentiary hearing on whether Plaintiff was in compliance with the medical treatment of Dr. Hansen.
16. At the hearing before Deputy Commissioner Baddour, it was Defendants' position that until Plaintiff was in compliance with medical treatment with Dr. Hansen, they were unable to offer him vocational rehabilitation.
17. Plaintiff testified at the hearing before the Deputy Commissioner on June 14, 2005 that when he initially decided to return to Dr. Hansen in order to comply with the October 1, 1999 Full Commission Opinion and Award, he was not able to get an appointment without a referral. Plaintiff further testified that when he saw Dr. Hansen on February 14, 2005, he informed Dr. Hansen that the Full Commission ordered him to return to him for medical treatment, and that the Full Commission did not approve either Dr. Hyman or Dr. Towne as his authorized treating physicians.
18. On February 14, 2005, Dr. Hansen prepared a detailed office note which included the following excerpt:
 This is, therefore, to reassert that at the time we initiated our care with Mr. Sykes, he was under the care of Dr. Alan Towne and Dr. Ross Bullock. Dr. Bullock has referred Mr. Sykes for further back care and to Dr. Towne for chronic pain management. Mr. Sykes continues to see Dr. Towne on a regular basis for chronic pain management. It is my feeling that Mr. Sykes has legitimate, chronic, and ongoing pain from failed back surgery. This is extremely well documented in our office records. He continues under the care of Dr. Allen Towne at MCV [Medical College of Virginia]. I find this entirely appropriate. These names were mentioned in our prior charts and I have no difficulty *Page 7 
recommending ongoing care with them. I believe it was appropriate then and continues to be appropriate now.
19. In correspondence dated May 16, 2005, Dr. Hansen wrote to clarify his previous office note:
 It is my understanding that there was some issue regarding the nature of my referrals for ongoing care. As is stipulated in my 02-14-05 note; at the time Mr. Sykes was being seen, I thought it appropriate for him to continue under treatment of Dr. Alan Towne and physicians that he recommended. It is my opinion, therefore, that he should continue to follow-up with Dr. Towne, Dr. Bullock, and Dr. Hyman as necessary to treat his chronic medical problems. Again, this is spelled out in my communication from 02-14-05. I am not sure why any confusion lingers regarding this point.
20. Defendants deposed Dr. Hansen on July 18, 2005. Dr. Hansen is a board-certified neurologist with a specialty certification in pain medicine and neuro-physiology. Dr. Hansen acknowledged that Plaintiff was under treatment with other physicians at Medical College of Virginia, and expressed a desire to continue treatment with those physicians. Dr. Hansen indicated that he was willing to continue treating Plaintiff. Dr. Hansen does "interventional pain management," which includes the administration of injections and medication. Dr. Hansen also explained his 1998 referrals, which were the subject of prior binding decisions of the North Carolina Industrial Commission and the North Carolina Court of Appeals.
21. According to Dr. Hansen's testimony, on February 14, 2005, he gave Plaintiff written referrals to Dr. Towne for chronic pain management, Dr. Hyman for general medicine, and Dr. Malcolm Ross Bullock for spine care, if needed. According to Dr. Hansen, he referred Plaintiff to these physicians at the Medical College of Virginia because:
 I always think it's best for people to stay with who was taking care of you, so I said that's an appropriate place to go, those are appropriate physicians to seek. You [Mr. Sykes] requested that I stipulate that in a referral, and I, in fact, wrote out on my prescription pad and said the patient is referred to these physicians. *Page 8 
In fact, you're [Mr. Sykes] already seeing those physicians. But I went ahead and did that as a referral so that it would be indicated that I thought that was appropriate for your management.
22. The Full Commission finds in accordance with the September 1, 2009 Opinion of the North Carolina Court of Appeals that Plaintiff failed to establish by the greater weight of the evidence, that he is in compliance with the treatment recommendations of Dr. Hansen.
23. The Full Commission further finds in accordance with the September 1, 2009 Opinion of the North Carolina Court of Appeals, that Plaintiff may achieve compliance with the October 1, 1999 Full Commission Opinion and Award by re-establishing a treatment relationship with and complying with the treatment recommendations of Dr. Hansen.
24. To assist Plaintiff in his effort to comply, the Full Commission finds that it would be beneficial to assign a nurse from the Nurse's Section of the North Carolina Industrial Commission to facilitate the process of scheduling an appointment for Plaintiff with Dr. Hansen and to provide medical case management as necessary.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSION OF LAW
Plaintiff failed to establish, by the greater weight of the evidence, that he is in compliance with the treatment recommendations of Dr. Robert Blaine Hansen, II. Therefore, Plaintiff has not proven that his temporary total disability compensation should be reinstated.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following: *Page 9 
 AWARD
1. Plaintiff has not proven that his suspended temporary total disability compensation should be reinstated; therefore, Plaintiff's motion for reinstatement of compensation is DENIED.
2. Plaintiff may achieve compliance with the October 1, 1999 Full Commission Opinion and Award by re-establishing a treatment relationship with and complying with the treatment recommendations of Dr. Robert Blaine Hansen, II.
3. It is hereby ORDERED that this case is referred to Karen Smith, Director of the North Carolina Industrial Commission Nurse's Section for assignment of a nurse to this case to schedule an appointment for Plaintiff with Dr. Hansen and to provide additional nurse case management as necessary to assist Plaintiff in coming into compliance. The nurse assigned to this case shall provide written reports to the parties and to the Industrial Commission at the attention of Bernadine S. Ballance, Commissioner.
3. The Full Commission shall retain jurisdiction over this matter.
4. No costs are assessed.
This the ___ day of February 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD *Page 10 
COMMISSIONER
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 1